IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIE E. DIEMER, | ) |
| Plaintiff, | ) No. 05 C 7179 |
| vs. | ) |
| | ) Judge Virginia M. Kendall |
| FRATERNAL ORDER OF POLICE, | ) |
| CHICAGO LODGE 7, | ) Magistrate Judge Jeffrey Cole |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### I.
### BACKGROUND

This is a Title VII employment discrimination case in which the plaintiff alleges that the defendant discharged her from her position as staff attorney because she was pregnant. In November 2006, Ms. Diemer, who was representing herself, issued a Re-Notice of Deposition to "Bob Podgorny, Member of the Board of Directors of Defendant Fraternal Order of Police, Chicago Lodge 7." (*Defendant's Memorandum*, Ex. A). Robert Podgorny is a member of the Lodge's Board of Directors. The notice was served on the Lodge's attorney, James Convery, of the Chicago firm of Laner Muchin, which is representing the defendant in this case. (Ex. A). It was decided that Mr. Podgorny would be represented at the deposition by a Mr. Pleines, who is in-house counsel at the Fraternal Order of Police. Although there are hints in the record, the reason for this decision and the benefits thought to be realized from this arrangement are not apparent, and it would be improper to speculate.

On November 8th, Mr. Podgorny met with Mr. Pleines to prepare for his deposition at the FOP offices. (Podgorny dep. at 12). There was no discussion of representation by anyone other than

Mr. Pleines. Mr. Convery and Mr. Pleines were both present during the entirety of the preparation session on November 8th. A week later, Mr. Podgorny appeared for the deposition with Mr. Pleines. When Ms. Diemer attempted to question Mr. Podgorny about discussions during his preparation session, both Mr. Pleines and Mr. Convery objected on attorney-client privilege grounds. Mr. Convery insisted that notwithstanding Mr. Podgorny's testimony that Mr. Pleines was his lawyer, and that there had never been any discussion about Mr. Convery representing him in any capacity, he (Convery), was representing him in his capacity as a Board member.

Ms. Diemer contended that the attorney-client privilege was improperly asserted since Mr. Convery's presence on November 8th destroyed the attorney-client privilege – precisely whose privilege the motion does not exactly say. Some of the exchanges at the deposition suggest that the privilege that is at stake is the *Lodge's* attorney-client privilege, while the motion itself seems to contend that Mr. Podgorny had an individual privilege as a consequence of Mr. Pleines' representation and that it is this privilege that was waived by Mr. Convery's presence on November 8th. She has moved to compel Mr. Podgorny to answer the questions to which the privilege was asserted.

### A.
### Mr. Podgorny's Deposition

The deposition had barely begun when Ms. Diemer, noting the presence of both Mr. Pleines and Mr. Convery, asked about Mr. Podgorny's representation:

> Plaintiff: Before we begin, if I could just clarify on the record who is representing Mr. Podgorny here today?
>
> Pleines: I am.

(Podgorny Dep. at 3). There was no claim by Mr. Convery that he too was Mr Podgorny's lawyer. Ms. Diemer then said:

2

> Plaintiff: Then given Mr. Pleines' representation that he is counsel for the witness, I am going to note my objection to that on the record. This is a party witness. He is a board member of the defendant, Fraternal Order of Police. He's being deposed in that capacity and also will be asked questions here today regarding his former capacity as an officer of defendant, Fraternal Order of Police. I also note for the record that Mr. Pleines does not have an appearance on file in this case. Therefore, I am objecting to Mr. Pleines representing Mr. Podgorny in this deposition here today. Mr. Pleines, do you have a response?
>
> Pleines: No.

(Podgorny Dep. at 3-4). Again, this observation was met with silence from Mr. Convery.

Ms. Diemer's objection makes clear that she understood that Mr. Podgorny was there solely in his representative capacity as a Board member, not as an individual and it was in this limited capacity that he would be questioned. Following the exchange with Mr. Pleines, Ms. Diemer began her substantive questioning, which sought to explore Mr. Podgorny's preparation for his deposition:

> Plaintiff: When you met with Mr. Pleines on November 8th, 2006, to prepare for the deposition today, was anybody else present during that meeting?
>
> Podgorny: Yes.
>
> Plaintiff: Who else was present?
>
> Podgorny: Jim.
>
> Pleines: Indicating Mr. Convery.
>
> Plaintiff: And is Mr. Convery representing you here today?
>
> Podgorny: No, he's not.
>
> Plaintiff: Can you please tell me what if anything was said between—by you and what if anything was said by Mr. Convery during that meeting?
>
> Pleines: Objection, privilege.
>
> Plaintiff: There's no privilege. Mr. Convery is not his attorney.

3

> Convery: I was in that capacity representing the Fraternal Order of Police and Mr. Podgorny as a board member and pursuant to your notice, you were taking the deposition of Mr. Podgorny in his capacity as a member of the board of directors and I was there in that capacity. So it's my position that it's a privileged communication and I will direct the witness not to respond to the question.

(Podgorny Dep. at 19-20). *See also id.* at 23.

It is apparent from his comments that Mr. Convery was asserting the *Lodge's* attorney-client privilege. Mr. Podgorny went on to explain that the first time he had been informed that Mr. Convery was his counsel in his capacity as a Board member was when Mr. Convery said it at the deposition. (Podgorny Dep., 21). Perhaps co-counsel would have been a more apt description. In any event, Mr. Podgorny was quite insistent that Mr. Pleines was his attorney, and that Mr. Convery was representing the Lodge. (*Id.*, at 20-21, 26-27). Mr. Convery was equally adamant that even though no one had ever told Mr. Podgorny that Convery would be acting as his counsel since Mr. Podgorny was being deposed in his capacity as a Board member – just as Ms. Diemer herself emphasized in her opening exchange with Mr. Pleines at the deposition. The reality of the situation is that Mr. Podgorny had two lawyers, Pleines and Convery, both of whom had been provided by the Lodge.[1] (Podgorny Dep., at. 27-29).

Mr. Convery and Mr. Pleines found it appropriate to tag-team the plaintiff with objections. Mr. Pleines seemed to take the lead, offering objections based on the attorney-client privilege, even where they were clearly not warranted and even when they violated Rule 30(d)(1), Federal Rules of Civil Procedure. (Podgorny Dep., at. 13, 19, 23).[2] At one point, Mr. Pleines went so far as to object

---

[1] While normally the attorney-client relationship is a consensual one, *Arifin v. Matuszewich*, 2000 WL 796146 at *4 (N.D.Ill. 2000)(Holderman, J.), corporate employees are often provided with counsel chosen not by the employee but by the employer.

[2] Mr. Pleines raised inappropriate objections during the deposition. For example: "Objection... You
(continued...)

4

to the plaintiff's questions regarding whether Mr. Podgorny has asked Mr. Pleines to be his counsel. (Podgorny Dep., at. 13). He wisely capitulated on this point when challenged by plaintiff. Mr. Convery chimed in as well (*id.*, at. 20, 23) and, despite the record of objections by Mr. Pleines, asserted the he would "be making the objections for everyone." (*Id.*, at. 32).

Thwarted in her attempt to inquire about the November 8th meeting, Ms. Diemer shifted the focus of her questions to another matter. She asked Mr. Podgorny whether he ever informed anyone that he was concerned that if he testified about anything that occurred during the Lodge's executive session he might be kicked out of the union.[3] He answered that he had.

Plaintiff: Who did you tell?

Mr. Podgorny: Harold Brown.

Plaintiff: Did you ever advise Mr. Pleines of that?

Mr. Podgorny: I did.

Plaintiff: And when did you tell Mr. Pleines that?

Mr. Pleines: Objection, privilege. Don't answer.

Plaintiff: Did you ever tell Mr. Convery that?

Mr. Convery: Objection, privilege. I'm directing you not to respond.

(Podgorny Dep., at. 22-23).

---

[2](...continued)
can answer if you understand." (Tr. 17). "Objection... You can answer if you know." (Tr. 18). "Objection...You can answer if you understand it." (Tr. 20). If a witness does not understand a question or if he does not know the answer, he will say so. He does not need a lawyer to remind him not to answer a question when he cannot either because he does not know the answer or he does not understand the question. These sorts of objections are unnecessary and violative of Rule 30(d)(1). They have no purpose other than to suggest to the witness how to avoid answering the question.

[3] Ms. Diemer claimed that she had obtained the information from Mr. Convery. He refused to concede the information came from him, although the exchange at the deposition is not convincing. (Podgorny Dep., at 28-31).

In the midst of the cross-fire, Mr. Podgorny indicated that he would like to maintain the attorney-client privilege himself. (*Id.*, at 24). Eventually, Ms. Diemer demanded the court intervene because she felt it inappropriate that Mr. Convery was interposing privilege objections because he was "not counsel for Mr. Podgorny...." (Podgorny Dep., at. 32).[4] The Lodge's motion followed.

## B.
## The Parties' Positions

The Lodge urges that *its* attorney-client privilege must be sustained because the common interest doctrine applies to Mr. Podgorny and the Lodge, thereby insulating from inquiry what occurred at the November 8th preparation session. (*Defendant's Memorandum*, at 5-7). Alternatively, although obliquely phrased, the Lodge argues that any statements made at the November 8 preparation session are protected by the work product doctrine. (*Id.*, at 7-8). As articulated, the argument goes too far. *See S.R. Internat'l Business Ins. Co, Ltd. v. World Trade Center Properties LLC*, 2002 WL 1334821 at *6 (S.D.N.Y. 2002).

Ms. Diemer's argument is that Mr. Convery's presence destroyed the attorney-client privilege. Since it is a contradiction in terms to say that the presence of the *Lodge's lawyer* destroyed the *Lodge's* privilege, her argument of necessity must be that *Mr. Podgorny* had an individual attorney-client privilege through his association with Mr. Pleines that was waived by Mr. Convery's presence.[5] However, the theory—if that is what it is—is never developed, and there is no

---

[4] Even if that were true, it would not follow that Mr. Convery was precluded from raising objections to questions which affected the Lodge's attorney-client privilege.

[5] I say apparently because Ms. Diemer's brief never explicitly says whose privilege she is talking about. But it would be odd to argue that Mr. Convery's presence on November 8th destroyed the *Lodge's* attorney-client privilege, and her brief never argues that Mr. Pleines' presence resulted in a waiver of *that* privilege. Her focus is exclusively on Mr. Convery's presence.

6

claim that Mr. Podgorny was seeking legal advice in his individual capacity. Absent that showing, any claim that Mr Podgorny had an individual privilege is doomed. *See, e.g. Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005); *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123 (3rd Cir. 1986).

Ms. Diemer also submits that the common interest doctrine is inapplicable and that any work product protection had been waived. Finally, she contends that the crime-fraud exception applies to effect a waiver of the attorney-client privilege.

## II.
## ANALYSIS

### A.
### The Attorney-Client Privilege Generally

The attorney-client privilege has long been recognized as an important means of serving the public interest in the "observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It "is the oldest of the privileges for confidential communications known to the common law." *Id.* "[T]he purpose of the privilege [is] to encourage clients to make full disclosure to their attorneys." *Id.* The Seventh Circuit has long embraced the articulation of the attorney-client privilege first set forth by Dean Wigmore. *See, e.g., United States v. Evans*, 113 F.3d 1457 (7th Cir. 1997)(collecting cases):

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev.1961); *Jenkins v. Bartlett*, _F.3d _, 2007 WL 1174848 (7th Cir. Apr. 23, 2007). The party seeking to invoke the privilege bears the burden of proving all of its essential elements. *Evans*, 113

F.3d at 1461; *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). Further, because the privilege is in derogation of the search for the truth, it is construed narrowly. *Jenkins v. Bartlett; Evans*, 113 F.3d at 1461; *White*, 950 F.2d at 430 (7th Cir. 1991).

Although the attorney-client privilege generally attaches only to statements made by the client, statements made by the lawyer to the client will be protected in circumstances where those communications rest on confidential information obtained from the client, or where those communications would reveal the substance of a confidential communication by the client. *Rehling v. City of Chicago*, 207 F.3d 1009, 1019 (7th Cir. 2000)

**B.**
**There Was No Waiver Of The Attorney Client Privilege At The November 8th Meeting**

From one perspective, what occurred in this case is a not uncommon feature of federal litigation. Corporate officers are often represented at depositions by lawyers other than those representing the corporation in the litigation. There may be strategic reasons for hiring other counsel, and there are assuredly ethical considerations that may mandate that the party's counsel (whether in-house or outside, independent counsel) refrain from representing the employee. *See* Lawrence J. Fox, *Your Client's Employee Is Being Deposed: Are You Ethically Prepared?*, 29 LITIGATION 17 (Summer 2003); *Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005). It is usually these considerations that drive the decision to obtain independent counsel for the employee.

What occurred here, however, was truly singular: Mr. Podgorny's "lawyer" at the deposition, Mr. Pleines, was not an independent, third-party lawyer. Rather, he was in-house counsel for the Fraternal Order of Police. Thus, on November 8th, all of those participating were affiliated with or employed by effectively the same employer, and the subject they were discussing

8

was a matter of common interest, the suit by Ms. Diemer. Ms. Diemer's unamplified contention that Mr. Convery's presence was for analytical purpose no different than say Mr. Podgorny's girl friend's is unpersuasive. *See Jenkins v. Bartlett, supra.*

Under these circumstances, Mr. Podgorny surely had an expectation of confidentiality that what was being said would go no farther than the FOP–but would be shared with the FOP.[6] Thus, while Mr. Pleines was Mr. Podgorny's lawyer for purposes of the deposition, Mr. Convery's presence on November 8th and his conversations with Mr. Podgorny could not possibly have resulted in a waiver of the *Lodge's* attorney-client privilege. Mr. Podgorny was a member of the Board, and he was talking with the Board's counsel about the litigation.[7] Mr. Podgorny was not and is not a defendant, and he cannot be subjected to liability under Title VII. *Worth v. Tyer*, 276 F.3d 249, 262 (7th Cir. 2001)(noting Congress's aversion to individual liability under Title VII); *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 494 (7th Cir. 1998)(" . . . Congress intended only for employers to be liable for their agent's actions under the traditional *respondeat superior* doctrine, not for agents to be personally liable."). Ms. Diemer was keenly aware of the limited status in which he would be testifying as evidenced by the specificity of the Notice of Deposition, (*Defendant's Memorandum,*

---

[6] "[W]here the same attorney represents two parties having a common interest, and each party communicates with the attorney, the communications are privileged from disclosure at the instance of a third person." *Simpson v. Motorists Mutual Ins. Co.*, 494 F.2d 850, 855 (7th Cir.), *cert. denied*, 419 U.S. 901 (1974). *See also* 8 Wigmore at § 2312; *Wachtel v. Health Net, Inc.*, 2007 WL 958572 5 (3rd Cir. 2007); *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir.2000). Here, Mr. Podgorny was communicating with two lawyers, both of whom were acting on behalf of a common principal, and on his behalf in his representative capacity–the only capacity involved here. If communications from two separate people to a shared lawyer are protected, quite obviously communications from one person to two lawyers sharing a common interest with that individual must likewise be. The point is so fundamental as to not require explication.

[7] Had Mr. Convery prepared Mr. Podgorny for the deposition, without Mr. Pleines, there could be no question but that the Lodge's attorney-client privilege would have unaffected. *Upjohn v. United States*, 449 U.S. 383 (1981). *See generally* Edna Epstein, The Attorney-Client Privilege and the Work-Product Doctrine, 99-104 (ABA, Fourth ed. 2001) and Fourth ed. supp. at 16 (ABA 2004)

9

Ex. A; Podgorny Dep., at 11, 27-28), her objections to Mr. Pleines even participating as counsel, and her statements at the beginning of the deposition about the capacity in which she deposing Mr. Podgorny. (Podgorny Dep., at 3-4). Thus, there could not have been any confusion in this case over the capacity in which Mr. Podgorny was appearing or in which he was being represented. *See, e.g. Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005); *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123 (3rd Cir. 1986).

In *United States v. Landof*, 591 F.2d 36, 39 (9th Cir. 1978), the court held that: "[t]he mere presence of a third party at an attorney-client meeting does not necessarily destroy the privilege. If, for example, [the third party] was acting as an agent of appellant, the privilege would not necessarily be destroyed. Or, if [the third party] was acting as an attorney, the privilege could be asserted." *See also Jenkins v. Bartlett*, __F.3d __ (7th Cir. Apr. 23, 2007)(slip op. No. 06 C 2495). Both Mr. Pleines and Mr. Convery were agents of the FOP and Mr. Podgorny was a member of the Lodge's Board. It would be incongruous to contend that under these circumstances the confidentiality necessary for maintenance of the attorney-client privilege was absent.[8]

The Lodge is a labor organization and, like a corporation, is protected by the attorney-client privilege. *Upjohn*, 449 U.S. at 390. But, of course, such entities cannot speak directly to their lawyers; they are inanimate entities that can only act through their agents. *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 348 (1985). Nor can they directly waive the privilege. *Id.* The power to do that rests with the entity's management and must be exercised by its board.

---

[8] The result might be different if a conflict of interest had precipitated Mr. Convery's decision to obtain the services of Mr. Pleines (or hired independent outside counsel). If that were the case, Mr. Convery's participation in the deposition preparation session might not have been appropriate. *See* Lawrence J. Fox, *Your Client's Employee Is Being Deposed: Are You Ethically Prepared?*, 29 LITIGATION 17 (Summer 2003).

10

*Id.* Notably, board *members* as individuals do not have the power to waive the entity's privilege. *Id.* at 348-49. Accordingly, Mr. Podgorny did not have the power to waive the Lodge's privilege, even had he been so inclined.

*United States v. Evans*, 954 F.Supp. 165 (N.D.Ill. 1997), *aff'd*, 113 F.3d 1457 (7th Cir. 1997) does not advance Ms. Diemer's argument. In *Evans*, the client attended a meeting with his attorney and a friend – who happened to be a lawyer but who was not acting as his counsel. Even though the client's attorney warned him that his friend's presence might render the conversation unprivileged, the client insisted that his friend remain. 954 F.Supp. at 169. Not surprisingly, the court found that the friend was not acting as an attorney at the meeting and thus there could have been no expectation of confidentiality for statements between the client and his attorney. *Id.* at 169-70. In affirming, the Seventh Circuit quoted language from Wigmore that the district court had edited, but which is *apropos* here: "[o]ne of the circumstances by which it is commonly apparent that the communication is not confidential is the presence of a third person *who is not the agent of either client or attorney.*" *Evans*, 113 F.3d at 1462 (*quoting* 8 Wigmore, Evidence § 2311 (J. McNaughton rev. 1961)).

An argument may be "scotched" where its acceptance would produce "outlandish consequences." *United States v. Cinergy Corp.*, 458 F.3d 705, 709 (7th Cir. 2006). Acceptance of Ms. Diemer's argument would have precisely such consequences. It may be too fine a metaphysical point, but to take plaintiff's argument to its logical conclusion would mean that corporations and similar organizations which must act through individuals would have no attorney-client privilege because the confidential nature of the information an officer or board member shared with corporate counsel would be "destroyed" by the inevitable "presence" of the officer or board member in his indivisible "individual capacity."

11

Accordingly, the attorney-client privilege was not waived as to conversations that occurred on November 8th insofar as they related to the litigation.[9]

## C.
## The Lodge Has Failed To Establish That The Attorney Client Privilege Forecloses Questions Relating To Communications By Mr. Podgorny Regarding Fears Of Expulsion

There is a final point, and it is one that is troubling. Mr. Podgorny testified without objection from anyone that he was concerned that if he testified about anything that occurred during the Lodge's executive session he might be kicked out of the union. He said that he had told Mr. Harold Brown *and* Mr. Pleines of these concerns. Only when plaintiff asked *when* Mr. Podgorny told Mr. Pleines did Mr. Pleines object.

The Lodge does not address this exchange at all in its response. "The general rule in the Seventh Circuit is that a party's failure to respond to an opposing party's argument implies concession." *MCI WorldCom Network Services, Inc. v. Atlas Excavating, Inc.*, 2006 WL 3542332 at *3 (N.D.Ill. 2006)(Moran, J.). In addition, it is the Lodge's burden as the party claiming the privilege to demonstrate that all of the essential preconditions to its invocation exist as to these particular questions. *See United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003); *supra*

---

[9] The plaintiff's argument that the common interest doctrine is not applicable is at once beside the point given the above discussion and is not borne out by a more thorough analysis of the common interest rule. *See In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 407, 416-417 (N.D.Ill. 2006). As for the Lodge's work product argument, although the doctrine applies to "documents and other tangible things," Fed.R.Civ.P. 26(b)(3); *Upjohn*, 449 U.S. at 400 (1981), a deponent in the course of a deposition may not be asked questions that would reveal expressly his or his lawyer's mental impressions, conclusions, opinions, or legal theories concerning the litigation. *Russell v. General Elec. Co.*, 149 F.R.D. 578, 581 (N.D.Ill. 1993); *Barrett Industrial Trucks, Inc. v. Old Republic Ins. Co.*, 129 F.R.D. 515, 518 (N.D.Ill.1990). At the same time, there is no prohibition against discovery of the underlying facts of a dispute even if a deponent's response to a question was based on information provided by counsel. *Russell*, 149 F.R.D. at 581; *Barrett*, 129 F.R.D. at 518. Obviously, an extremely broad question like, "what was said at the meeting?" would likely touch on both mental impressions and facts, but the defendant does not raise the overbreadth of the question as an issue. Hence, it is forfeited. *United States v. Wesley*, 422 F.3d 509, 520 (7th Cir. 2005)("A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law."); *United States v. Moore*, 425 F.3d 1061, 1069 n. 5 (7th Cir. 2005) (defining the terms).

at 7. The Lodge has made no attempt to do so, and consequently, has failed to carry its burden of demonstrating that the information sought is privileged.[10] In addition, by its failure to timely object to the question of whether the statements were made, it has waived any privilege claim it might otherwise have had. *United States v. Wesley*, 422 F.3d 509, 520 (7th Cir. 2005)("A forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law."). Ms. Diemer is free to pursue the matter at a renewed deposition of Mr. Podgorny.

The situation as it relates to Mr. Convery is a bit different since he did object when plaintiff asked Mr. Podgorny if he told Mr. Convery. (Podgorny Dep., at 22-23). However, the statement on its face does not appear to be a confidential request for legal advice so much as it is an expression of concern (or perhaps fear) of the consequences from disclosing what may have occurred at an executive session. If Mr. Podgorny entertains fears of reprisal in the event of disclosure of information, that is a matter that is obviously discoverable as it goes to the critical question of bias and testimonial motivation. *United States v. Abel*, 469 U.S. 45 (1984). Merely because Mr. Podgorny may have revealed his concerns to a lawyer does not mean that the disclosure is privileged. Other requirements must be satisfied, and the Lodge has not sustained its burden to show that the disclosures, if they exist, are privileged.

The purpose of the conversation at the November 8th meeting was to obtain and give legal advice. So the over broad question, "what was said at the meeting," precipitated a proper attorney-client privilege objection. By the same token, however, without elaboration from the Lodge, it

---

[10] One cannot tell whether a conversation is privileged unless one knows when they were made. The objection by the defendant draws a conjurer's circle around the whole matter and would preclude in almost all instances any demonstration that questioned statements were made at a time when there was even an attorney-client relationship.

13

cannot be concluded that the answers to the above question "Did you ever tell Mr. Convery that?" – would reveal privileged, client confidences. As the proponent of the attorney-client privilege, the Lodge has the burden of establishing all of its elements. The Lodge has not even attempted to do so here. Accordingly, its objection to the question about disclosures of fear to Mr. Convery are overruled.[11]

## CONCLUSION

For the foregoing reasons, the defendant's motion to sustain the attorney-client privilege [#53] is GRANTED in part and DENIED in part.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 4-27-07

---

[11] The plaintiff submits that the privilege as to this exchange was waived under the crime-fraud exception. The analysis required under the exception is more complicated than the plaintiff's laconic discussion in her brief suggests. See *In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 407, 420-22 (N.D.Ill. 2006). The brief devotes barely a page to the argument and cites one case. (*Response*, at 13). Because the Lodge has failed to establish that the privilege applies, however, further analysis of the crime-fraud exception is presently unnecessary.

14